IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville June 25, 2019

## STATE OF TENNESSEE v. JAMES ARNOLD DEMOSS

**Appeal from the Circuit Court for Dickson County**
**Nos. 22CC-2016-CR-346, 22CC-2016-CR-347        David D. Wolfe, Judge**

————————————————

### No. M2017-02353-CCA-R3-CD

————————————————

The Appellant, James Arnold Demoss, pled guilty to aggravated burglary, a Class C felony, and driving on a revoked license, fourth offense, a Class A misdemeanor. Pursuant to the plea agreement, the trial court was to determine the length and manner of service of the sentences. After a sentencing hearing, the trial court sentenced the Appellant as a Range II, multiple offender to ten years in confinement for aggravated burglary and to a concurrent sentence of eleven months, twenty-nine days for driving on a revoked license, fourth offense. On appeal, the Appellant contends that the trial court erred by denying his request for alternative sentencing. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR. and J. ROSS DYER, JJ., joined.

Connie Jones, Ashland City, Tennessee, for the appellant, James Arnold Demoss.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Wendell Ray Couch, Jr., District Attorney General; and Sarah Wojnarowski, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

In October 2016, the Dickson County Grand Jury indicted the Appellant for aggravated burglary, theft of property valued less than $500, and driving on a revoked license, fourth offense. In August 2017, he pled no contest to aggravated burglary and pled guilty to driving on a revoked license, fourth offense. The State dismissed the theft

charge. Pursuant to the plea agreement, the trial court was to determine the length and manner of service of the sentences. The plea also included the Appellant's agreement to pay restitution for any items not recovered and for any damage from the break-in.

At the Appellant's guilty plea hearing, the State gave the following factual account of the aggravated burglary: In June 2016, Bryant Elliott reported that his home had been burglarized and that items had been stolen from his residence. He had cameras on his property that "caught" the Appellant and the Appellant's vehicle. Police officers spoke with the Appellant, and he admitted to stealing items from Mr. Elliott.

The trial court held a sentencing hearing in October 2017. At the hearing, Detective Russell Morgan of the Dickson County Sherriff's Office testified that he investigated the burglary and met with Mr. Elliott and Mr. Elliott's wife at their neighbor's house. Detective Morgan's understanding was that at the time of the burglary, Mr. and Mrs. Elliott's single-wide trailer "was being set up, or had just been set up" on a piece of land on Wills Road. They had installed a "game" or "trail" camera on the property due to a series of break-ins that had occurred over the preceding couple of months. The camera took video or photographs of the suspect leaving the trailer with "armloads" of stolen property and took photographs of the suspect's vehicle. After reviewing the video, Detective Morgan thought he recognized the suspect by a tattoo on the suspect's leg. Detective Morgan explained that the jail took photographs of all inmates' tattoos. Detective Morgan was able to identify the Appellant in the video by comparing jail photographs of a tattoo on the Appellant's leg with an image captured by Mr. Elliott's camera.

Detective Morgan testified that Mrs. Elliott later gave him a video in which she confronted Appellant. In the video, the Appellant confessed to taking the property and said he would return some of the items. Detective Morgan arrested the Appellant, and the Appellant confessed that he had taken pliers, wire-cutters, mini-blinds, and some shop wire from the property. The Appellant said that he had returned the pliers and wire cutters but that he had "dumped" the blinds and the shop light on the corner of Wills Road. Detective Morgan went to Wills Road and looked for the items but was unable to find them. He learned that the Appellant had worked for a company that set up mobile homes and that the Appellant had helped set up Mr. and Mrs. Elliott's trailer. On cross-examination, Detective Morgan testified that he had no proof the Appellant was responsible for the prior break-ins.

Mr. Elliott testified that he paid $381.93 to replace the stolen mini-blinds and $361.20 to replace a door that was damaged during the burglary. He produced receipts for the new blinds and door. He said that he "[p]robably" paid $30.00 or $50.00 for the stolen shop light and that he replaced the light. In addition, he said that he had missed

- 2 -

about twelve hours of work and that he earned twenty-eight dollars per hour. The Appellant returned the wire cutters and pliers to Mrs. Elliott. Mr. Elliott said that the Appellant had helped set up his mobile home and that he saw and talked to the Appellant during the set-up. He said that the Appellant should serve time in confinement and that the Appellant should get "a real job, instead of someone like going around and breaking in trailers."

On cross-examination, Mr. Elliott testified that someone broke into his trailer three times. The Appellant pled guilty only to the third break-in. Mr. Elliott said he could not remember if the trailer door was damaged during the second or third break-in.

John McGranahan, an Investigating Officer with State Probation and Parole, testified that he prepared the Appellant's presentence report, and the State introduced the report into evidence. Mr. McGranahan acknowledged that the report showed the Appellant had been convicted of seventeen prior felonies, including four burglaries, six felony thefts, and "a string of forgeries." The majority of the felony convictions were more than ten years old. The Appellant also had several misdemeanor convictions, and he had been placed on various types of release. He did well on some forms of release, but on other forms of release, his alternative sentence was revoked after incurring new charges. One week before the offenses in this case, the Appellant was sentenced to probation for misdemeanor evading arrest.

Mr. McGranahan testified that based on a risk assessment, the Appellant's likelihood to reoffend was high. The Appellant moved to Gallatin after committing the offenses in this case, which Mr. McGranahan viewed as a positive development because the Appellant had gained some distance from the environment where he committed the offenses. Mr. Grahahan acknowledged that the Appellant had made an effort to "establish a stable lifestyle."

Angie Sanchez, the Appellant's fiancée, testified that at the time of the sentencing hearing, she had known the Appellant for one year and that they had been living together for three or four months. The Appellant helped support Ms. Sanchez and her four young children. She said that the Appellant had "changed" in that he was employed and was "working his butt off." She stated that he had a "positive attitude," that he paid most of their bills, and that she and her children would be "out on the streets" without him. On cross-examination, Ms. Sanchez testified that the Appellant "moved to a whole new different county, just to get away from this" and that "he's turned his life around."

The trial court allowed the Appellant to make a brief statement. During the statement, the Appellant said he had changed his life. He worked every day and was

staying away from Dickson. He said that he was forty-two years old and that he had decided it was time to grow up.

At the conclusion of the hearing, the trial court stated that the Appellant "could be now classified as a persistent, but since notice was not given of anything more than just a multiple, a Range 2 offender, then that is the range that he will be sentenced at." The trial court noted that the applicable range of punishment for a Range II, multiple offender convicted of aggravated burglary, a Class C felony, was six to ten years. See Tenn. Code Ann. § 40-35-112(b)(3).

With respect to enhancement factors, the trial court applied enhancement factor (1), that the Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1). Additionally, the trial court applied enhancement factor (8), that the Appellant "before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." Tenn. Code Ann. § 40-35-114(8). The trial court also found that the offense involved more than one victim, Mr. and Mrs. Elliott, but placed no weight on that factor. See Tenn. Code Ann. § 40-35-114(3). Regarding mitigating factors, the trial court found that the Appellant's criminal conduct neither caused nor threatened serious bodily injury and that the Appellant assisted law enforcement with locating or recovering some of the stolen property. See Tenn. Code Ann. § 40-35-114(1), (10). The trial court ordered that the Appellant serve ten years for aggravated burglary and a concurrent sentence of eleven months, twenty-nine days for driving on a revoked license, fourth offense, a Class A misdemeanor.

The trial court noted that even though the crimes in this case were not violent, the victims' ability to feel safe in their own home was jeopardized after the burglary. The court found that confinement was necessary to protect society by restraining an individual with a long history of criminal conduct, that confinement was necessary to avoid depreciating the seriousness of the offense, that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to Appellant, and that the Appellant lacked potential for rehabilitation. Accordingly, the trial court ordered that the Appellant serve his effective ten-year sentence in confinement.

## II. Analysis

On appeal, the Appellant contends that he should have been afforded another opportunity for probation or community corrections because he "had begun to make some positive choices to turn his life around and was becoming a good, productive citizen." The State argues that the trial court properly sentenced the Appellant. We agree with the State.

- 4 -

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In determining a defendant's sentence, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the Appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6).

When determining a defendant's suitability for alternative sentencing, courts should consider whether the following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), are applicable:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history

of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

Here, the Appellant is a Range II, multiple offender. Therefore, he is not considered to be a favorable candidate for alternative sentencing. Moreover, the trial court found that alternative sentencing was not appropriate in this case due the Appellant's extensive criminal history. The record supports the trial court's determination. The Appellant had at least seventeen prior felony convictions that involved separate periods of incarceration or supervision. The Appellant committed most of those felonies more than ten years before he committed the offenses in this case. However, as the trial court noted, the Appellant had committed five misdemeanors in the past ten years, "so . . . he's not committing as many felonies, he's just committing more misdemeanors." The trial court also found that confinement was necessary to avoid depreciating the seriousness of the offense, stating, "If I do not confine Mr. Demoss, after 17 prior felony convictions, for the commission of a new felony, then how am [I] not depreciating the seriousness of the offense for which he has been found guilty?" Finally, the trial court found that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Appellant, noting that he had served probation, and that the Appellant lacked potential for rehabilitation, stating that "[h]e's had 17 . . chances, . . . those are just the felonies -- to rehabilitate himself." We conclude that the trial court properly exercised its discretion when it ordered that the Appellant serve his ten-year sentence in confinement.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE